IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**MARVIN MYERS on behalf of**
**PATTIE M. MYERS, deceased**                                        **PLAINTIFF**

VS.                             CIVIL ACTION NO. 5:18-cv-81(DCB)(JCG)

**BLUE CROSS & BLUE SHIELD**
**OF MISSISSIPPI, A MUTUAL**
**INSURANCE COMPANY**                                                **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Plaintiff Marvin Myers' Motion to Supplement Administrative Record ("A.R.") and Memorandum in support thereof **(docket entry 40)**. Also before the Court is Defendant Blue Cross & Blue Shield of Mississippi ("BCBS")'s Response to the Plaintiff's Motion to Supplement Administrative Record **(docket entry 43)**.

The Court, having reviewed the Plaintiff's Motion and the Defendant's Response, and being otherwise fully informed in the premises, finds as follows:

Plaintiff's Motion to Supplement the A.R. seeks to add a typed transcribed operative report missing from the hospital records, and a physician affidavit explaining the terminology used by the

1

surgeon in the operative report and the surgeon's handwritten notes.

Plaintiff shows that his deceased wife, Patti Myers, underwent laparoscopic sleeve gastrectomy on February 9, 2015. On February 10, 2015, Mrs. Myers was admitted to the critical care unit of Iberia Medical Center (not where the gastric sleeve procedure was performed) through the emergency department. In addition to suspected anastomotic leak associated with the gastric sleeve procedure, Mrs. Myers was diagnosed with acute respiratory failure/ARDS, severe pulmonary hypertension, pneumonia, anemia, sepsis, pleural effusion/volume overload, and encephalopathy. See physician's note, A.R. at 318. Mrs. Myers died at Iberia Medical Center on March 14, 2015 after a month-long hospitalization.

BCBS denied coverage of the hospitalization expenses based on an exclusion in the health plan for complications of "non-covered services." The plan defined weight loss surgery as a noncovered service.

The A.R. filed by BCBS contains approximately 200 pages of Mrs. Myers' hospital records. These records include the handwritten operative progress notes of Dr. Thomas Borland, who performed an exploratory Laparotomy on February 11, 2015. A.R. at 117-18. Plaintiff adds that the administrative record does not

include Dr. Borland's transcribed and typed Operative Report of the procedure. See Exhibit 1.

The critical care notes included in the A.R. refer to "anastomotic leak with associated abscess." See, e.g., A.R. at 120. According to Plaintiff, in Mrs. Myers' case, an anastomotic leak would have been related to the gastric sleeve procedure. Plaintiff further states that despite a repeated reference to anastomotic leak in the critical care notes, the transcribed typed Operative Report reveals that Dr. Borland did not find any leakage. According to the report, "An InterMed tube was inserted down through the sleeve to try to identify the leakage several times with saline being placed, but no leakage could be seen." **(docket entry 40-1, p.2)**. The report continues, "Again, multiple attempts to identify a leak were unsuccessful. At [no] time did we ever see some leakage from the staple line." Id.

While his report shows Dr. Borland did not find leakage at the site of the anastomosis, he did find a large hiatal hernia with "a lot of clots and purulent material." Id. Dr. Borland further found a subphrenic abscess, for which he placed a Jackson-Pratt drain. His handwritten note mentions drainage of the subphrenic abscess, A.R. at 117, but the Operative Report describes the condition and the drainage procedure in detail.

In sum, the transcribed typed Operative Report shows no leakage at the site of the gastric bypass, but it does show a large hiatal hernia and abscess in the subphrenic space (area below the diaphragm). Plaintiff states that it is crucial that the typed report shows no problem at the site of the gastric bypass, but it reveals a large unrelated abscess in another abdominal area that necessitated drainage.

Plaintiff has attached as Exhibit 2 the Affidavit of William H. Durham, M.D., a physician board-certified in internal medicine. Dr. Durham reviewed Mrs. Myers' hospital records including Dr. Borland's operative report. Dr. Durham's affidavit explains the terminology used in Dr. Borland's report and specifically explains that the abscess found by Dr. Borland was in an area in the abdominal space separate and apart from the site of the gastric bypass (where Dr. Borland found no leakage). The affidavit further explains that the subphrenic abscess would have developed before the gastric bypass procedure because of the time required for such an abscess to develop. According to Dr. Durham, the abscess was caused by the inflammation of the hiatal hernia. Dr. Durham concludes septic shock from the abscess (not a complication of the gastric bypass) necessitated Mrs. Myers' final hospitalization.

In resolving a coverage determination, the Court may consider evidence not in the administrative record if it "would assist the

court in understanding medical terms and procedures." Crosby v. Louisiana Health Service and Indem. Co., 647 F.3d 258, 263 (5th Cir. 2011). Plaintiff claims that, as an initial point, the typed transcribed Operative Report should have been considered by BCBS during the administrative process, and that its omission from the administrative record is puzzling. Plaintiff further suggests that the Court should order the inclusion of the Operative Report in the administrative record, as the report by its very nature obviously describes "medical terms and procedures." Dr. Durham' affidavit also provides the Court with an explanation of anatomical terms, physiological processes, and the procedures undergone by Mrs. Myers. Plaintiff urges that it would assist the Court in "understanding medical terms and procedures" and should be considered under Crosby.

Plaintiff requests the Court to enter an Order allowing supplementation of the administrative record to include Dr. Borland's Operative Report and Dr. Durham's affidavit.

In response, BCBS urges the Court to deny the Plaintiff's Motion **(docket entry 40)** seeking to supplement the administrative record in this case to add two documents: (1) an operative report never before submitted to or reviewed by BCBS; and (2) the affidavit of a non-treating physician purporting to explain the report and other records.

On or about February 11, 2015, Iberia Medical Center requested precertification for Mrs. Myers' care. A.R. 414-415. BCBS requested and received medical records from IMC the next day. A.R. 418-421. The records showed that Mrs. Myers was suffering complications from gastric bypass. Id. Accordingly, on or about February 17, 2015, BCBS informed Iberia Medical Center that Ms. Myers' surgery and the resulting hospital stay and treatment would not be covered because the services were specifically excluded under Mrs. Myers' Plan. A.R. 115. Iberia Medical Center submitted additional clinical records to Blue Cross on March 10, 2015. A.R. 422-435.

On May 19, 2015, BCBS issued an Explanation of Benefits to Plaintiff, stating that the services received at Iberia Medical Center were not covered services. A.R. 210. On July 7, 2015, IMC requested redetermination of its claims for Mrs. Myers' treatment. A.R. 113. In its letter, IMC acknowledged that Mrs. Myers was admitted to the facility on February 10, 2015 "with a diagnosis of anastomotic leak post Gastric Bypass, severe abdominal pain and shortness of breath." A.R. 113. Additional medical records were included with the letter. A.R. 113-193. IMC resubmitted the July 7, 2015 letter on or about August 24, 2015. A.R. 112.

On September 18, 2015, BCBS informed IMC the denial would be maintained because under the member's Plan, any surgery or service

6

for the treatment of obesity was not covered regardless of medical necessity, nor were any services or procedures resulting from complications of a non-covered service. A.R. 198. (Because Mrs. Myers received treatment in Louisiana, the letter was sent to the provider by Blue Cross Blue Shield of Louisiana on behalf of Blue Cross & Blue Shield of Mississippi, a Mutual Insurance Company). On October 6, 2015, IMC submitted a letter requesting a second level reconsideration, but provided no additional medical records. A.R. 197. The letter stated, in part, that ". . . Ms. Myers presented with complications to this [non-covered] procedure . . ." Id. BCBS maintained the denial. A.R. 110.

After filing this action, on August 2, 2018, Plaintiff's counsel served a purported appeal on BCBS, but did not provide any additional medical records. A.R. 436-442.

Plaintiff now seeks to add supplementation of the A.R. BCBS opposes supplementation of the record because it was not submitted to BCBS until it was filed as an exhibit to the Plaintiff's Motion on July 28, 2019, more than four years after the original denial. "A long line of Fifth Circuit cases stands for the proposition that, when assessing factual questions, the district court is constrained to the evidence before" the plan administrator. Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 299 (5th Cir. 1999) (en banc), overruled on other grounds by Metro. Life Ins. Co. v.

Glenn, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). The medical record in question was not before the plan administrator and, therefore, cannot simply be added to the administrative record at this stage in the case. Rather, courts have held that in some special circumstances the proper remedy for an incomplete administrative record is remand to the administrator for review, not consideration of evidence outside the administrative record by a district court. See, e.g., Hedgepeth v. Blue Cross & Blue Shield of Miss., 2006 WL 2331191 at *2 (N.D. Miss. Aug. 10, 2006)(In ordering remand to the Plan Administrator, the Hedgepeth Court retained jurisdiction and the case remained open during the review).

The Plaintiff's attempt to couch the two pages of the Operative Report as evidence that may assist the Court in understanding medical terminology is unavailing. In addition to the obvious fact that it is a medical record, if the two pages did that, Plaintiff would not have found it necessary to seek out a physician to review them.

The Plaintiff's request to add the physician affidavit to the administrative record must be denied as well because (1) the affidavit itself is not a medical record related to the treatment of Mrs. Myers to be reviewed in coverage determinations; (2) the affidavit purportedly offers expert testimony regarding the two

8

page report that was never submitted to BCBS and cannot be added to the administrative record at this stage; and (3) Plaintiff has not followed any of the procedural requirements for designating an expert under Federal Rule of Civil Procedure 26(a)(2) and Local Rule 26(2).  (It is also worth noting that the affidavit states that Mrs. Myers' treating physician is "[t]he only individual who can accurately and definitively state if there was a post-surgery anastomic leak causing the sepsis."  (docket entry 40-2 at ¶ 2).

This Court finds that Plaintiff's Motion to Supplement **(docket entry 40)** the Administrative Record in this case to add (1) an operative report never before submitted to or reviewed by BCBS of Mississippi; and (2) a physician affidavit explaining the terminology used by the surgeon in the operative report and the surgeon's handwritten notes, is DENIED.

SO ORDERED, this the 18th day of March, 2020.


_/s/ David Bramlette_____

UNITED STATES DISTRICT JUDGE